## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 25-mj-189** |
| **v.** | |
| **TERRANCE KELLY,** | **Det. Hearing:** September 3, 2025 |
| **Defendant.** | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The defendant, Terrance Kelly, was arrested on August 28, 2025, in possession of a loaded Glock 23, with a high-capacity magazine, and is charged with 18 U.S.C. § 922(g). Kelly is currently on supervised release, after pleading guilty on March 6, 2025, to simple assault and a condition of release violation in D.C. Superior Court. The United States asks that Mr. Kelly be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(e). Kelly – who appears to be undeterred from criminal conduct by either his supervised release conditions or his prior experiences with law enforcement – is a danger to the community and there are no combination of conditions that will assure the safety of the community were he to be released.

### BACKGROUND

On August 28, 2025, at approximately 8:20 p.m., Special Police Officer ("SPO") Matthew Harris saw a door propped open with a rock at a residential housing complex in Southeast, Washington, DC. SPO Harris removed the rock, and the Defendant, Terrance Kelly, put the rock back. SPO Harris removed the rock again, at which point Mr. Kelly pulled away in his car. At approximately 9:20 p.m., Mr. Kelly drove up and blocked in SPO Harris, who was sitting in his parked car. Mr. Kelly yelled at SPO Harris that if he [SPO Harris] moved the rock again they were

going to have a problem. SPO Harris said that Mr. Kelly smelled strongly of alcohol and had slurred speech. SPO Harris called over the radio for assistance.

Mr. Kelly parked his car and went into one of the buildings. SPO Harris followed the Mr. Kelly and told him that whatever unit he went in, SPO Harris would find out and that unit would get a tenant infraction. Mr. Kelly came back outside. SPO Charles Roberts arrived at approximately 9:40 p.m. Mr. Kelly was yelling and agitated when SPO Roberts arrived. SPO Roberts knew Mr. Kelly and was able to talk to him to calm him down. Mr. Kelly was wearing a black satchel that was open. During the interaction, SPO Roberts observed an L shape in the bag consistent with a firearm and saw the butt end of a magazine inside of the black satchel.

SPO Roberts asked Mr. Kelly if he had a permit for the gun in his bag, and Mr. Kelly said no. MPD Officer Alexander Harris responded to the scene at approximately 9:54 p.m. He seized one Glock 23, Serial No. BSYK679, that contained a 22-cartridge capacity magazine from the black satchel that the Mr. Kelly had been wearing. The magazine contained 18 cartridges, and there was one cartridge in the chamber.   Mr. Kelly has a felony conviction that resulted in a term of imprisonment of more than 12 months.

## <u>ARGUMENT</u>

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a . . . 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

A review of the 3142(g) factors makes clear that no condition or combinations of conditions will assure the safety of the community if Mr. Kelly were to be released.

I.    **The Nature and Circumstances of the Offense Merit Detention.**

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. Mr. Kelly is charged with a serious offense carrying significant penalties. For violating 18 U.S.C. § 922(g), Mr. Kelly faces a maximum sentence of up to fifteen years' imprisonment.

Mr. Kelly is charged with a possessory offense and this Court has warned against discounting the inherent danger associated with loaded firearms. *See United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *7-8 (D.D.C. Feb. 6, 2023), *aff'd,* No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023) (the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"). Here, Mr. Kelly possessed a chambered firearm – that is, a firearm that was primed and ready to be fired with a single pull of the trigger – equipped with 18 additional rounds of ammunition. *see United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (finding that a defendant should be detained pretrial in part because "the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling").   Further, Mr. Kelly did not just possess this firearm in his home. He possessed this loaded, chambered firearm on his person – in an open satchel slung across his chest and thus easily accessible to him – while threatening a law enforcement officer.   His possession of that firearm posed a serious risk of harm or death to himself and the law enforcement officers with whom he engaged. The nature and circumstances of his offenses merit detention.

## II.   <u>The Weight of the Evidence Against the Defendant is Strong.</u>

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.[1]   The Government's case against Mr. Kelly is strong. The firearm was recovered inside

---

[1] While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not

the satchel that was on Mr. Kelly's person.   Two SPO officers were present when the firearm was observed in the Mr. Kelly's satchel. Thus, this is not a case of constructive possession or an instance where DNA or other forensic evidence will be required to prove Mr. Kelly's guilt. Moreover, the officers' version of events is corroborated by CCTV footage.

"[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case, and Mr. Kelly should be detained pretrial.

### III.    The Defendant's History and Characteristics Merit Detention.

The third factor, Mr. Kelly's history and characteristics, likewise favors detention. Mr. Kelly has a lengthy criminal history, extending more than ten years, and he has been convicted of other gun offenses.   In 2017, he pled guilty to assault on a police officer and felon in possession of a firearm.   He was sentenced to 30 months of incarceration and three years of supervised release.   He was arrested for driving under the influence while still on supervision in March 2019 and on January 2020, and he was convicted of both offenses.   Most recently, in March 2025, he pled guilty to simple assault and a condition of release violation for a domestic violence incident

---

automatically be weighed less than the remaining statutory pretrial detention factors."   2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate."   *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

that occurred at the same residential housing complex where the Mr. Kelly was arrested in the instant offense.   Mr. Kelly is currently on supervision for that offense. In light of Mr. Kelly's historically and consistently poor performance while under supervision, and that he was on yet another period of supervision at the time he possessed the firearm in this case, this Court cannot be confident that Mr. Kelly will abide by any conditions of release.   Accordingly, this factor also weighs in favor of detention.

## IV.    Mr. Kelly Presents a Danger to the Community.

The fourth and final factor, danger to any person or the community posed by Mr. Kelly's release, similarly weighs in favor of detention. "At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community."  *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. Mr. Kelly's possession of this firearm alone presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). Mr. Kelly's prior arrests, incarceration, and multiple periods of supervision have done nothing to deter him from possessing firearms or threatening law enforcement.   Thus, this final factor also weighs in favor of detention.

6

## <u>CONCLUSION</u>

For all the foregoing reasons, the Government respectfully requests that the Court detain Mr. Kelly pending trial on these charges.

Respectfully submitted,

JEANNINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:   */s/ Kate M. Naseef*
     Kate M. Naseef
     VA Bar No. 87850
     Assistant United States Attorney
     601 D Street NW
     Washington, D.C. 20530
     202-252-1796
     Kate.Naseef2@usdoj.gov